```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
LG CAPITAL FUNDING, LLC,                 :
                                         :      17cv3841(DLC)
                    Plaintiff,           :
                                         :      OPINION AND ORDER
        -v-                              :
                                         :
PROTEXT MOBILITY, INC.,                  :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

APPEARANCES

For the plaintiff:
Kevin Kehrli
Garson, Segal, Steinmetz, Fladgate LLP
164 West 25th Street, Suite 11R
New York, NY 10001

For the defendant:
Bryan A. McKenna
590 Avenue of the Americas, 18th Floor
New York, NY 10022

DENISE COTE, District Judge:

Plaintiff LG Capital Funding, LLC ("LG") commenced this breach of contract lawsuit on February 22, 2017. There is diversity jurisdiction over this action. This Opinion contains the Court's findings of fact and conclusions of law following a bench trial.

A bench trial was scheduled for February 26, 2018. The parties consented on February 23 to submit the case to the Court based on their pre-trial submissions, which included

declarations of direct testimony from two witnesses: Joseph Lerman, the Managing Director of LG, and David Lewis, currently the Senior Strategic Advisor of defendant Protext Mobility, Inc. ("Protext").

In brief, LG lent money to Protext and was partially repaid for those loans by selling in the open market shares of stock that LG obtained from Protext. There were eight successful stock transfers from Protext to LG in 2014. The instant dispute concerns a ninth request to convert debt into stock sent by email by an LG representative to Protext's Chief Executive Officer ("CEO"). Unlike the eight prior requests, which had been sent to David Lewis, who was then Protext's Executive Director, this ninth request was never acted upon. LG contends it is now entitled to damages in the amount of $738,758.05,[1] plus attorney's fees, due to this failure. Protext contends that the ninth request was invalid because the course of conduct between the parties required LG to send any request to David Lewis and it would be unjust to seek damages premised on a stock price that is far greater now than LG's 2014 stock price.

---

[1] $155,578.05 for the remaining principal and interest under all three Notes, and $583,000.00 for lost profits on the shares Protext failed to deliver. These amounts are current as of the date of the plaintiff's pretrial memorandum, filed on February 2, 2018.

2

BACKGROUND

The following constitutes this Court's findings of fact. Between April and July of 2014, LG entered into two Securities Purchase Agreements ("SPAs") with Protext, and one Debt Purchase Agreement ("DPA") with a third party, Lantern Rock Limited Partnership ("Lantern"). Each agreement was accompanied by a Convertible Redeemable Promissory Note ("Note") issued by Protext to plaintiff. On behalf of Protext, the SPAs were signed by Protext's then-Chief Executive Officer, Steve Berman. No Protext representative signed the DPA. Through these three transactions, LG paid $100,000 in consideration.[2]

The Note issued in conjunction with the SPA entered on April 2, 2014 ("Note 1") reached maturity on April 2, 2015. David Lewis, as Protext's Executive Director, signed Note 1 on behalf of Protext.[3] The Note issued in conjunction with SPA entered on July 2, 2014 ("Note 2") reached maturity on July 2, 2015. The DPA was also entered into on July 2, 2014 by LG, but with a third party, Lantern, and so no Protext representative

---

[2] LG paid $30,000 to Protext on April 2, 2014, $50,000 to Protext on July 2, 2014, and another $20,000 to Lantern on July 2, 2014.

[3] Note 1's signature line lists Mr. Lewis as "Executive Director" of the company, even though the SPA signed by Steve Berman on the same day lists Mr. Lewis as the Chief Financial Officer of Protext, see infra. In his Declaration Testimony, Mr. Lewis states that "when the events relating to this case took place . . . I was Executive Director."

3

signed the DPA.  The DPA provided for the purchase of $21,500 in principal under a convertible promissory note in the amount of $445,124.99 issued by Protext to Lantern on December 29, 2010. Protext also issued a replacement $21,500.00, 8% Convertible Redeemable Promissory Note to LG with a maturity date of July 2, 2015 ("Note 3").  Steve Berman, the CEO of Protext, signed Notes 2 and 3.  Note 3 reached maturity on July 2, 2015.

Notice Provisions

The text of the SPAs -- to which Notes 1 and 2 are directly related -- gives information regarding whom to contact at the Company.  Section 5(f) of the April 2, 2014 SPA notes that "all <u>notices</u>, demands, requests, consent, approvals, and other communication required or permitted" should be sent to the Company at its Florida mailing address "Attn: Steve Berman, CEO."

The same section of the July 2, 2014 SPA contains the same language and address, but directs that the communication should be sent "Attn: David Lewis, CFO."  The July 2, 2014 DPA, to which Note 3 is related, does not contain any information regarding a physical address for Protext, because the DPA is an agreement between LG and a third party.

Each Note issued in connection with the SPAs and the DPA contains language regarding the method by which LG can exercise

4

its right to convert portions of the principal balance and interest of the Notes into shares of Protext stock. Each Note requires LG to give the "Company," which is identified in the Notes as "Pro Text Mobility, Inc.," written notice of any conversion request. The relevant language in each is identical and reads:

> Any Holder of this Note electing to exercise the right of conversion . . . is required to <u>give the Company written confirmation</u> that this Note is being converted ("<u>Notice of Conversion</u>")[.] The date of receipt (including receipt by telecopy) of such Notice of Conversion shall be the Conversion Date."

None of the Notes specifies to whom written notice should be sent. The Notes do not list a specific email or other address.

The Notes contain precise details of when LG can exercise its right to convert, as well as the method of calculation for the price for each share of common stock received in exchange for principal. Note 1 reads:

> The Holder of this Note is entitled, at its option, at any time after 180 days, and after full cash payment for the shares convertible hereunder, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") without restrictive legend of any nature, at a price ("Conversion Price") for each share of Common Stock equal to <u>50% of the average of the two lowest closing bid prices</u> of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded or any exchange upon which the Common Stock may be traded in the future ("Exchange") <u>for the ten prior trading days</u> including the day upon which a Notice of Conversion is received by the Company(provided such Notice of Conversion is delivered <u>by fax or other electronic method of communication to the Company</u> after 4 P.M. Eastern

5

> Standard or Daylight Savings Time if the Holder wishes to
> included [sic] the same day closing price).

(Emphasis added.)

Note 2 contains similar, but slightly different language:

> The Holder of this Note is entitled, at its option, at any time after 180 days, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") without restrictive legend of any nature, at a price ("Conversion Price") for each share of Common Stock equal to <u>45% of the average of the two lowest trading prices</u> of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded or any exchange upon which the Common Stock may be traded in the future ("Exchange") for the ten prior trading days including the day upon which a Notice of Conversion is received by the Company (provided such Notice of Conversion is delivered <u>by fax or other electronic method of communication to the Company</u> after 4 P.M. Eastern Standard or Daylight Savings Time if the Holder wishes to include the same day closing price).

(Emphasis added.)  Note 3 contains nearly identical language to Note 2, with the exception that the price for each share of Common Stock is equal to 50% of the average of the two lowest trading prices of the Common Stock.

Importantly, all three Notes articulate that, in the event the Note holder wishes to have the day on which Notice is sent included among the "ten prior trading days" used to calculate the Conversion Price, then the Notice of Conversion is to be sent "to the Company" by "fax or other electronic method communication after 4 p.m."  In a later section of each Note, the text reads: "The Holder may, at any time, send in a Notice

6

of Conversion to the Company for Interest Shares based on the formula provided[.]"

Note 3 includes, as an exhibit, a Notice of Conversion form, which the plaintiff was directed to complete as its written confirmation of conversion. Neither the text of the Note nor the exhibit provides an email address or fax number to which the Notice should be sent.

All three Notes contain default provisions. In relevant part, the Notes define an "Event of Default" such that a default on one Note constitutes a default on all others. "Events of Default" include if Protext defaults "in the payment of principal or interest on this Note or any other note issued to the Holder by the Company." In short, Protext's default on one Note for failing to convert shares after receipt of a Notice of Conversion would constitute an "Event of Default," such that Protext would be in default on all other Notes.

The Eight Conversions

On eight separate occasions after the second SPA and the DPA were executed, from July 21 to October 29, LG successfully exercised its right to convert portions of the principal balance and interest of Note 3 into Protext Common Stock.[4] It did not

---

[4] The eight successful conversions were initiated on: July 21, August 1, August 29, September 4, September 5, September 12,

7

convert any portions of the balances of Notes 1 or 2. On each of those occasions, LG emailed David Lewis, then the Executive Director of Protext, with an email attachment containing a completed version of the form Notice of Conversion included as an exhibit to Note 3. The emails were sent to Mr. Lewis' email address, dl.rockisland@gmail.com.

In the case of the eighth conversion, commenced on October 29, 2014 (the "Eighth Conversion"), the conversion process took longer. In that case, an LG representative followed up directly with Mr. Lewis, at dl.rockisland@gmail.com. Nochum Greenberg, an employee at LG, sent emails to Mr. Lewis on October 31 and November 3 inquiring about the delay of the conversion. When those emails went unresponded to, Mr. Greenberg sent another email on November 5. That email was addressed to David Lewis, but also copied the email address sberman@3dmc.tv. This is the first record of LG sending any communication to Mr. Berman or using the email address. Mr. Greenberg sent another email on November 24 explaining that the conversion was still not completed due to an instruction error. That email was addressed to David Lewis, but also included the email address sberman@3dmc.tv in the To: field. Later that same day, on

---

October 24, and October 29. A September 30 conversion was canceled. The conversion at issue here is an attempted November 17 conversion.

8

November 24, Mr. Lewis updated the instruction, and forwarded his communication with the relevant broker to Mr. Greenberg. Mr. Lewis did not include the email address sberman@3dmc.tv in his email to Mr. Greenberg. At no point in this process did LG receive a reply from sberman@3dmc.tv. The Eighth Conversion was finally completed on November 24, 2014.

While the Eighth Conversion took the longest to complete, there were other instances of back-and-forth between plaintiff and defendant when Notice of Conversions were not immediately processed. For example, there was a slight delay in processing a Notice of Conversion submitted to Mr. Lewis by plaintiff on July 21, 2014. In that case, the plaintiff followed up with Mr. Lewis on July 24. The issue was resolved on July 25. All emails from plaintiff were directed to David Lewis, at dl.rockisland@gmail.com. Similarly, plaintiff attempted to initiate a conversion on August 1, 2014 and sent a follow up communication to Mr. Lewis, at dl.rockisland@gmail.com, on August 5.

A similar pattern took hold for four other conversions: those commenced on August 29, September 4, September 5, and September 12. All initial communications regarding any Notice of Conversion were initiated by Tomer Tal, at tomer@newadventureattorneys.com, and follow up communication by Nochum Greenberg, at nochum@lgcapitalfunding.com. All initial

and follow up emails were sent to Mr. Lewis, at dl.rockisland@gmail.com. A Notice sent on September 30 was ultimately cancelled. Communication regarding that canceled transaction took place between Mr. Lewis and Mr. Greenberg; the initial Notice was sent by Mr. Tal. A Notice sent on October 24 appeared to have been effectuated smoothly, with no record of follow-up submitted. No email communications other than those sent by Mr. Greenberg on November 5 and 24, with respect to the Eighth Conversion, included the email address sberman@3dmc.tv.

Attempt at a Ninth Conversion

On November 17, 2014, before the Eighth Conversion was completed, LG attempted to exercise its right to convert portions of the principal balance and interest of Note 3 into Protext Common Stock for a ninth time. LG submitted its Notice of Conversion ("November 17 Notice") via email to sberman@3dmc.tv. Mr. Lewis' email address, used on all prior correspondence regarding Notices of Conversion, was not included in that communication, even though the salutation was addressed to "David." On November 17, Steve Berman was LG's Chief Executive Officer. As noted above, LG used this sberman@3dmc.tv on two other occasions, both of which occurred in connection with the Eighth Conversion. Those emails were dated November 5

and November 24, and both of them included David Lewis' email address as well.

The plaintiff did not send any follow-up emails to anyone at Protext after November 17 to check on the status of the November 17 Notice. To date, LG has not delivered the shares requested in the November 17 Notice.

LG's Demand

It is undisputed that, to date, Protext has not repaid the principal and accrued interest under Notes 1 and 2. The amounts due with respect to Notes 1 and 2 are not in controversy. It is also undisputed that, to date, Protext has not repaid the remaining principal and accrued interest under Note 3, but the amount due is in controversy due to the dispute over the November 17 Notice.

Within months of the Eighth Conversion in 2014, Protext essentially ceased operations for lack of funding. In 2016, after Protext's operations had been revived through a merger, LG contacted David Lewis and sought shares pursuant to the unfulfilled November 17 Notice, calculated on the basis of the highest price Protext had reached in the intervening two years, plus the penalties and interest due under the Notes. This lawsuit ensued.

## DISCUSSION

It is undisputed that New York law governs this dispute.[5] Under New York law, to prevail on a claim for breach of contract, the plaintiff must show: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011). After a contract has been formed, parties to it are able to alter or waive portions of an agreement by their "course of performance." C.T. Chemicals (U.S.A.), Inc. v. Vinmar Impex, Inc., 81 N.Y.2d 174, 179 (1993). "[F]or a course of performance to demonstrate mutual assent to a modification, it must be unequivocally referable to the modification." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003) (applying New York law). "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned," and "[s]uch abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgt., L.P., 7 N.Y.3d 96, 104 (2006) (citation omitted).

Under New York law, ambiguity exists "where a contract term could suggest more than one meaning when viewed objectively by a

---

[5] The SPAs, DPA, and Notes all have choice of law provisions that indicate New York as the applicable law.

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004) (citation omitted). "Ambiguity in a contract is the inadequacy of the wording to classify or characterize something that has potential significance." Id. It is well settled that where there is ambiguity in a contract, a court may consider the parties' course of conduct to ascertain the parties' intent. See, e.g., Waverly Corp. v. City of New York, 48 A.D.3d 261, 265 (N.Y. App. Div. 2008) ("The best evidence of the intent of parties to a contract is their conduct after the contract is formed."); Citibank, N.A. v. 666 Fifth Ave. Ltd. Partnership. Ltd. Partnership, 2 A.D.3d 331, 332 (N.Y. App. Div. 2003) ("In view of the ambiguity of the [contract] provisions particularly, the trial court appropriately relied on the parties' course of conduct to determine their intent.").

Separate agreements and contracts are usually read and interpreted separately, unless they are "inextricably intertwined." Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC, 20 N.Y.3d 438, 445 (2013). Contracts are inextricably intertwined when the breach of one would "undo the obligations imposed by the other." Id. But "the issue of the

dependency of separate contracts boils down to the intent of the parties." Novick v. AXA Network, LLC, 642 F.3d 304, 312 (2d Cir. 2011) (citation omitted). Under New York law,

> [w]hether the parties intended to treat both agreements as mutually dependent contracts, the breach of one undoing the obligations under the other, is a question of fact. In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances.

Id. (citation and emphasis omitted).

Under basic principles of agency law, "notice to the agent is notice to the principal, unless the person giving notice has reason to know that the agent has no duty to or will not transmit the message to the principal." Rai v. W.B. Imico Lexington Fee, LLC, 802 F.3d 353, 360 (2d Cir. 2015) (citation omitted). "The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it." Center v. Hampton Affiliates, 66 N.Y.2d 782, 784 (1985). A Chief Executive Officer of a company is generally presumed to be an agent of a company. As the Honorable Learned Hand observed, "whatever powers are usual in the business may be assumed to have been granted" to the president or other chief executive of a company.

Schwartz v. United Merchants & Mfrs., 72 F.2d 256, 258 (2d Cir. 1934)(holding that, in contrast, express authority must be granted for "unusual" or extraordinary contracts).

It is not disputed that the parties entered into several contracts with each other. It is also undisputed that the SPAs, DPA, and Notes should be read and interpreted together. Each agreement contains a cross-default provision: a default on one Note functions as a default on others.

There is also no dispute that the plaintiff performed: the plaintiff paid due consideration for the SPAs and the DPA. It is also undisputed that the defendant has not repaid the plaintiff the principal and accrued interest under the Notes; the defendant has failed to perform in that regard.

The crux of this suit surrounds the alleged failure of the defendant to perform on Note 3, specifically whether the defendant failed to deliver shares pursuant to the November 17 Notice. If defendant did fail to deliver those shares, the damages to which plaintiff is entitled are exponentially higher than if plaintiff were simply entitled to the principal and accrued interest otherwise owing under the Notes without the shares.

The SPAs gave the only directions regarding the person within the "Company" to whom notice should be sent. The second SPA changed that person from Steve Berman to David Lewis. The

July 2, 2014 SPA gave a physical address and mailing instructions to where "all notices" should be sent. The accompanying Note, Note 2, gave instructions for electronic or fax delivery of notices to the "Company." Read together, the instructions direct LG to send electronic delivery of notices to David Lewis.

The second SPA and Note 2, both dated July 2, 2014, preceded each of the eight stock conversions. LG followed the direction given in the July 2, 2014 SPA and sent each of its eight notices to convert stock to David Lewis. When there was a delay, or when LG wished to cancel a conversion request, it sent emails to Mr. Lewis. This course of conduct was entirely consistent with the instructions in the July 2, 2014 SPA and Note 2, and demonstrates that there was no confusion or ambiguity regarding the proper course for making effective notice to the Company.

Moreover, the record is devoid of evidence that could have led LG to believe that the sole email to which the November 14 Notice was sent -- sberman@3dmc.tv -- was an effective method of complying with the contractual notice requirements. There were no emails from Mr. Berman from that email address. Two emails from plaintiff which included sberman@3dmc.tv, concerning the October 29 Notice, were also sent to David Lewis at his own email address and, significantly, were responded to by Mr.

16

Lewis, using the same email address he used throughout the parties' correspondence: dl.rockisland@gmail.com.  Based on the record, plaintiff had no reasonable basis to believe that Mr. Berman was receiving emails regarding stock conversions at sberman@3dmc.tv, or that including that address in email communication regarding conversion of Note 3 would garner a response from Mr. Berman.  The address sberman@3dmc.tv does not appear anywhere in the parties' agreements.  Communications from the defendant to the plaintiff never included the address sberman@3dmc.tv.  Nothing in the record suggests that a Notice of Conversion sent to sberman@3dmc.tv alone would be effective.

Plaintiff argues that it was in "substantial compliance" with the notice provision of Note 3.  It argues that the parties' course of conduct did not establish a binding practice between the parties and that plaintiff only had to provide written confirmation of conversion to the "Company."  Further, plaintiff argues, because Steve Berman signed relevant transaction documents -- he signed all agreements between the parties except for Note 1 -- on behalf of Protext, it was reasonable for LG to assume that it could send a Notice of Conversion directly to him: as an agent of the Company, he was a proper recipient of the Notice.  These arguments are not sufficient to overcome the notice instructions in the July 2,

2014 SPA and the parties' course of conduct, which complied with those instructions.

## CONCLUSION

The plaintiff failed to effectuate a proper Notice of Conversion and is therefore not entitled to the lost income of the shares requested in the November 17 Notice, nor to the damages it claims it is due because of defendant's alleged failure to perform on that Notice. There was no Event of Default related to the November 17 Notice. Accordingly, it is hereby

ORDERED that the plaintiff shall submit a proposed final judgment, reflecting the above ruling, by March 5, 2018.

Dated: New York, New York
       February 28, 2018

```
                            _____
                                 DENISE COTE
                            United States District Judge
```